IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA,       )
                                )
                    Plaintiff,  )
                                )
         v.                     )      No. 3:05-CR-24
                                )      (JORDAN/GUYTON)
ABIGAIL MERRIMAN,               )
                                )
                    Defendant.  )

## REPORT AND RECOMMENDATION

This case is before the Court on the defendant's Motion to Suppress Evidence [Doc. 16]. This motion was referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on May 2, 2005. Assistant United States Attorney Brownlow Marsh was present representing the government. Assistant Federal Defender Kim Tollison was present representing the defendant, Abigail Merriman. The defendant was also present.

The defendant, Abigail Merriman ("Merriman") has been indicted [Doc. 3] on a five-count indictment, alleging as follows: Count one alleges that the defendant possessed methamphetamine on September 27, 2004, with intent to distribute. Count two charges the defendant with possession of the chemical psuedoephedrine on September 27, 2004, with intent to manufacture methamphetamine. Count three alleges that on September 27, 2004, the defendant possessed chemicals, equipment, and materials, which can be used to manufacture methamphetamine, with the intent that they would be used for that purpose. Count four charges the defendant with being a felon in possession of a Hi-Point nine millimeter pistol on September 27,

1

2004. Count five alleges that the defendant was an unlawful user of controlled substances and possessed a Hi-Point nine millimeter pistol on September 27, 2004. Merriman has moved to suppress [Doc. 16] all items of evidence from the September 24 and 27, 2004 searches, alleging that:

> (1) The warrantless search on September 24, 2004, was made without her consent or, alternatively, exceeded the scope of her consent,
>
> (2) The search warrant upon which the officers relied to search her residence on September 27, 2004, was based upon a faulty affidavit, and
>
> (3) The defendant's October 2, 2004 statement must be suppressed as the fruit of these illegal searches.

The government responds [Doc. 18] that the September 24, 2004 search was pursuant to the defendant's valid consent and that the September 27, 2004 search was based on a valid warrant.

# I. FACTS

The government called the sole witness who testified. Sergeant Kenneth Lodwick ("Lodwick"), testified that he is a sergeant with the Dandridge Police Department ("DPD") and has been with the DPD for approximately fourteen (14) years.

On September 24, 2004, Lodwick went to the residence at 1033 Woodland Way. The Dandridge Water Department had reported the theft of water at that location. When Lodwick arrived at the location, he saw that a water hose had been tapped into the main line and was running to the residence. Lodwick and another DPD officer, Kevin Bunch ("Bunch"), began to approach the front door of the residence. Lodwick testified that as he and Bunch were approaching the front door of the residence, Hollis Romines ("Romines") looked out the front door and then closed it. Lodwick testified that he recognized Romines and knew that a state warrant on him was outstanding.

2

Lodwick knocked on the front door, and Merriman opened the door.

Lodwick testified that while at the door, he identified himself and had a discussion with Merriman regarding the water issue. Lodwick asked Merriman who was inside the residence with her, and she said Romines. Lodwick testified that he then asked, "Do you care if we come inside?" According to Lodwick, Merriman said, "No, come on in."

Upon entering the residence, Lodwick placed Romines under arrest. While doing so, Lodwick observed six or seven bongs in plain view, along with Sudafed, sterno heating units, acetone, matches, smoking pipes, and other paraphernalia. Lodwick testified that he had approximately one hundred (100) hours of training regarding methamphetamine manufacturing prior to the day in question. Based on that training, and based on what he saw in the residence, he deduced that methamphetamine manufacturing was occurring in the residence.

Lodwick testified that another police unit then arrived and that this unit transported Romines. Lodwick spoke again with Merriman inside the house. According to Lodwick, he asked Merriman for permission to search further. Merriman replied that the house did not belong to her. However, according to Lodwick, she also stated that she had been living in the house for a year. Still, Merriman said that it was "not my place to give consent." Lodwick then asked Merriman whether she had access to all rooms in the residence, and she replied in the affirmative. Lodwick again asked if the officers could search further, and according to Lodwick, she said, "Go ahead." Lodwick testified that as he was searching, the defendant said, "I might as well let you search because you will search anyway." Lodwick testified that he then asked again for consent to search further, and that Merriman agreed.

Lodwick then called the chief of the DPD. The chief of police was not far away and

arrived shortly thereafter. According to Lodwick, the chief of police explained to Merriman that she had the right to refuse to consent and asked her for consent to search further. Lodwick testified that she said, "Go ahead. That is fine."

Lodwick testified that he seized handwritten papers on how to make methamphetamine and where to purchase chemicals. He testified that he seized scales from the back room of the house, along with a saline torch, baggies, and acetone. He identified all of these items as items used in the manufacture of methamphetamine.

On September 27, 2004, Lodwick discussed the case with the District Attorney in Jefferson County. Lodwick then obtained a search warrant for the premises at 1033 Woodland Way on September 27, 2004. Lodwick testified that the affidavit, which he signed in support of the request for the search warrant, was based on all of the items which he saw inside the residence on September 24, 2004. He testified that all of the information in the affidavit was based upon his own observations and not upon information from a confidential source.

On cross-examination, Lodwick was asked about the affidavit which he signed on September 27, 2004, in support of his request for a search warrant. In that affidavit, Lodwick states that "Merriman has been convicted of manufacturing methamphetamine." The defense introduced Collective Exhibit 1, which consists of the judgments from Merriman's prior convictions. Lodwick reviewed this Collective Exhibit 1 and testified that Merriman, in fact, had not previously been convicted of manufacturing methamphetamine, as all of her prior convictions were for simple possession of either methamphetamine or marijuana. Lodwick was then asked about the language in the affidavit that "several other convicted felons with drug charges have been seen at the residence." Lodwick testified that the two which he could recall were Romines and a person whose

4

street name is "Hippy Joe."

Lodwick testified that on September 24, 2004, the water meter at 1033 Woodland Way was "busted off," and it was an obvious theft of water. Lodwick testified that he determined that a water theft was occurring before he walked up to the front door of the house.

Lodwick described Romines. He testified that he knew that the Sheriff's Department was looking for Romines on a violation of probation warrant. He said that he called and verified the outstanding warrant before arresting Romines. Lodwick testified that he could see Romines inside the residence from the front door. Lodwick testified that the was still investigating the water theft when he went inside the house. He said that he observed the drug paraphernalia in plain view.

Lodwick again testified that when he first asked to search, Merriman said that she could not give consent because it was not her house. Lodwick testified, however, that he told her that if she lived in the residence that she could give consent. At that point, Merriman gave consent to the officers to search further. Lodwick testified that it was approximately five (5) minutes later when Merriman said that it did not matter if she gave consent or not, because the officers would search anyway. Lodwick testified that when she made that statement he talked with her again and asked for consent to search further. Specifically, Lodwick testified that he told her that if she did not have anything to hide, she could give consent to search. Lodwick said, "It's up to you" to Merriman. Lodwick testified that Merriman did not limit the search. According to Lodwick, Merriman just said, "Go ahead."

With regard to the involvement of the chief of police, Lodwick testified that when the chief first arrived, Lodwick briefed him on the situation, including the defendant's comment.

5

The chief then spoke with Merriman, advised her of her rights, and asked if the officers could search. According to Lodwick, she said, "Go ahead" to the chief.

With regard to the discovery of the water theft, Lodwick testified that this gave him a "golden opportunity" to get into the house to see if methamphetamine was being manufactured inside. He wanted to do this based on the history of suspicion of methamphetamine manufacturing at that location.

On September 24, 2004, Lodwick took rolling papers, pipes, a book with information regarding chemical companies, and papers on how to make methamphetamine. Lodwick gave Merriman a receipt for these items because she told him that they were hers. When asked whether he observed a crime going on at that time, Lodwick stated that he did not.

On September 27, 2004, about fourteen people searched the residence, and all items were taken then. Also on September 27, 2004, a vehicle in the driveway was searched and a loaded handgun was found inside. Lodwick testified that Merriman was arrested on September 27, 2004, and charged with methamphetamine possession and production as well as possession of firearms. Lodwick testified that several days later, he talked with Merriman in jail. He testified that she signed a Waiver of Rights and made statements in the jail.

On September 24, 2004, Lodwick saw approximately twenty-four (24) tablets of Sudafed and on a kitchen counter in plain view. He saw four boxes of match books on the shelf next to the kitchen. He also saw a bottle of acetone, which was almost full, on the table in plain view. Later, he found fingernail polish in the refrigerator. In his testimony, he explained the use of fingernail polish in the methamphetamine manufacturing process. He acknowledged that there were legitimate uses for all of these items.

6

On re-direct examination, Lodwick testified that Merriman signed a Waiver of Miranda Rights at the jail prior to giving her statements.

## II. ANALYSIS

The Fourth Amendment protects citizens against unreasonable searches or seizures. U.S. Const. amend IV. The defendant contends that her Fourth Amendment rights were violated when officers searched her home on September 24 and September 27, 2004, and that any evidence gained as a result of these searches must be suppressed. She also maintains that the statements she gave while in jail during the days following her September 27, 2004 arrest should also be suppressed as the fruit of these illegal searches. The Court will examine each of these contentions in turn.

### A. Warrantless Search on September 24, 2004

The defendant contends that she did not give the officers consent to search her residence on September 24, 2004. She argues that the officers extended the investigation of water theft, which should have concluded with their observations outside the house, as a pretext to get inside the house. She claims that although she told Lodwick that she did not have the authority to permit a search, he improperly gave her legal advice that she could consent to a search. She argues that her remark to the effect that she could not stop the officers from searching reveals that she was not voluntarily consenting to the search but was merely acquiescing to their authority. She also maintains that the fact that officers attempted to persuade her to consent three times shows that she did not consent. Alternatively, she argues that if she did give consent to search, the officers exceeded the scope of that consent, which was limited to the investigation of the water theft.

7

The government responds that the officers were properly on the premises to investigate a claim of theft of water by the City of Dandridge. It maintains that during this investigation, they saw Romines, whom they knew to have an outstanding warrant. It asserts that Lodwick lawfully sought permission from the defendant to enter the house in order to arrest Romines. The government argues that while arresting Romines, the officers saw items known to be used to manufacture methamphetamine in plain view. The government also contends that the defendant voluntarily consented to the officers searching the house, which led to their discovery of additional items related to manufacturing methamphetamine.

An individual's voluntary consent to an officer's entry into or search of his or her home is an exception to the warrant requirement of the Fourth Amendment. A valid search of a premises may be made without a warrant and without probable cause if the person voluntarily consents to the search. Schneckloth v. Bustamante, 412 U.S. 218, 219, 228-29 (1973); United States v. Van Shutters, 163 F.3d 331, 335 (6th Cir. 1998) (holding that "[i]t is well-established that a warrantless search by law enforcement officials will be upheld if a detainee has voluntarily consented to the search"). The applicability of this exception is evaluated by examining the totality of the circumstances, with the burden resting on the government to prove both actual consent and its voluntary nature. United States v. Scott, 578 F.2d 1186, 1188-89 (6th Cir. 1978). The government must make this showing through "clear and positive testimony" and to a preponderance of the evidence. United States v. Worley, 193 F.3d 380, 385 (6th Cir. 1999). In determining whether consent was voluntary, the Court should consider the defendant's age, intelligence, and education level; if the defendant understood he had the right to decline to consent; if the defendant appreciated his constitutional rights; the nature and duration of the detention; and whether the officers used

8

punitive or coercive conduct.  Id. at 386.

The Court must first decide whether the officers in the present case had consent to enter 1033 Woodland Way.  The Court finds that Officers Lodwick and Bunch arrived at 1033 Woodland Way in order to investigate a report of theft of water by the Dandridge Water Department. At the residence, Lodwick saw that someone had used a water hose to tap into the main line, that the water hose ran to the residence, and that the water meter was "busted off."  As the officers approached the front door, Hollis Romines looked out the front door and then closed it.  Lodwick recognized Romines and knew that Romines had an outstanding warrant.  Lodwick knocked on the front door, which was opened by the defendant, and spoke with the defendant about the issue of the water line.

The defendant initially contends that the officers should have left the premises after observing the condition of the water line outside the house.  She maintains that the officers could have obtained a warrant for the owner of the house without any further investigation.  Assuming arguendo that the officers had probable cause for an arrest warrant based solely upon their observations outside the house, the officers are under no obligation to discontinue their investigation as soon as they have probable cause to arrest:

> There is no constitutional right to be arrested. The police are not required to guess at their peril the precise moment at which they have probable cause to arrest a suspect . . . . Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction.

Hoffa v. United States, 385 U.S. 293, 309 (1966); United States v. Alred, 513 F.2d 330, 333 (6th Cir. 1975) (quoting this passage from Hoffa).  The Court finds that the officers could continue to investigate the water theft despite their observations outside the house.

The question then becomes whether the officers could continue their investigation by speaking with the defendant inside her home in the absence of a warrant. Although an officer may freely approach an individual in a public place and speak with the person without implicating the Fourth Amendment, see Florida v. Bostick, 501 U.S. 429, 434 (1991), "the Fourth Amendment has drawn a firm line at the entrance to the house . . . [, which] may not reasonably be crossed without a warrant" absent exigent circumstances. Payton v. New York, 445 U.S. 573, 576 (1980). In the present case, the officer knew Romines was inside the residence and that he had an outstanding warrant for his arrest, but Romines was not a resident of 1033 Woodland Way. "[A]bsent exigent circumstances or *consent*, the search of a third party's home without a search warrant for the purpose of apprehending the subject of a valid arrest warrant violates the right of the third party to be free from unreasonable searches, as guaranteed by the fourth amendment." Bond v. Asiala, 704 F.2d 309, 314-15 (6th Cir. 1983) (emphasis added) (explaining the holding in Steagald v. United States, 451 U.S. 204, 213-14 (1981)). Lodwick testified that when he asked the defendant if he could come inside, she replied, "[C]ome on in." The Court finds that the defendant gave the officers consent to enter her home. The defendant does not appear to dispute the consent to enter but only the subsequent consent to search. Moreover, the Court finds no basis to question the voluntariness of the consent to enter. Accordingly, the Court finds that the officers lawfully entered Merriman's residence.

The Court finds that once inside the house, the officers saw six or seven bongs, Sudafed, sterno heating units, matches, and smoking pipes in plain view. In order for evidence to fall within the plain view exception to the warrant requirement, the officer must be lawfully present in the location from which the item in question can be plainly viewed, the incriminating nature of the item

10

must be immediately apparent, and the officer must be able to reach the item through a "lawful right of access." United States v. Bishop, 338 F.3d 623, 626 (6th Cir. 2003) (citing Horton v. California, 496 U.S. 128, 136-37 (1990)); United States v. Bradshaw, 102 F.3d 204, 211 (6th Cir. 1996). An officer may also seize items in plain view that are "'dangerous in themselves.'" Bishop, 338 F.3d at 626 (quoting Coolidge v. New Hampshire, 403 U.S. 443, 472 (1971) (plurality)). In the present case, Lodwick testified that he immediately recognized the above items as used in the manufacture of methamphetamine or to smoke illegal substances. The Court has already determined that Lodwick was lawfully inside the house pursuant to the defendant's valid consent to enter. Accordingly, one of the items (a brass pipe) seized on September 24, 2004, and numerous items that Lodwick saw but did not seize (bongs, matches, Sudafed, acetone, and sterno heating units) fall within the plain view exception to the warrant requirement.

Finally, Lodwick testified that during the September 24, 2004 search, he seized fingernail polish from the refrigerator, handwritten papers, and scales, a saline torch, baggies, and additional acetone from the back room of the house. These items do not fall within the plain view exception discussed above and were only properly seized if the defendant voluntarily consented to a search of the house after Lodwick entered. The defendant argues that her comment about the officers searching anyway shows that she was merely acquiescing to the officers' authority. She also maintains that her consent was not voluntary because the three officers talked her into giving consent. The government contends that the defendant's "flippant" and "off hand" remark was not an acquiescence to authority or a withdrawal of consent. Instead, it asserts that Lodwick stopped searching once the defendant made the comment and did not resume the search until both he and the chief of police had confirmed that the defendant would allow them to search.

11

The Court finds that after Romines was removed from the room, Lodwick asked if he could search the residence. The defendant initially replied that the house was not hers, and Lodwick established that she had lived there for a year and had access to all of the rooms. Lodwick then told the defendant if she lived there, she could give consent for a search. The defendant consented to the search by telling Lodwick, "Go ahead." After Lodwick had searched for approximately five minutes, Merriman said that she might as well allow Lodwick to search because he would search anyway. Once the defendant made this statement, Lodwick stopped searching and told the defendant that it was up to her whether he searched and that she could consent to his search if she did not have anything to hide. Lodwick said that the defendant again told him to proceed with the search and did not limit the search in any way. Instead of resuming the search, Lodwick called the DPD chief of police to the scene. The chief told the defendant that she could refuse to allow the search and asked for her consent to search, to which the defendant replied, "Go ahead. That is fine." Lodwick then continued his search of the residence, seizing handwritten papers on how to make methamphetamine and where to purchase chemicals. Lodwick also seized scales, a saline torch, baggies, and acetone from the back room of the house. At some point during the search, Lodwick seized fingernail polish from the refrigerator.

Initially, the Court notes that a "search does not violate the Fourth Amendment where police obtain consent to search from one who possesses common authority over the premises . . . ." United States v. Clutter, 914 F.2d 775, 777 (6th Cir. 1990). Instead, a "joint occupant assumes the risk of his co-occupant exposing their common private areas to a search." J. L. Foti Constr. Co. v. Donovan, 786 F.2d 714, 716 (6th Cir. 1986). The Court finds that in the present case, Lodwick ascertained that the defendant lived at the residence and had authority to enter all of the rooms.

Because the defendant was an occupant with common authority over the residence, she could properly consent to a search thereof.

In order to determine whether the defendant voluntarily consented to the search, the Court looks to the totality of the circumstances, including the defendant's age, intelligence, education level, whether the defendant understood she could refuse consent, whether the defendant appreciated her constitutional rights, the nature and length of the defendant's detention, and any punitive or coercive conduct on the part of the officers. <u>Worley</u>, 193 F.3d at 386. Although there was no testimony at the suppression hearing about the defendant's age or education level, the Court finds that Collective Exhibit 1 states that the defendant was born on June 28, 1969. The Court takes judicial notice of the fact that the defendant was thirty-five years old at the time of the search. Moreover, the defendant's six convictions for simple possession on October 14, 2002, and May 10, 2004, indicate that she was familiar with the criminal justice system and her constitutional rights. The Court finds that these factors show that the defendant's consent was knowing and voluntary.

The Court observes that the defendant was inside her own home at the time she gave consent and was not detained or restrained in anyway. The Court also finds that both Lodwick and the chief of police informed the defendant that the decision of whether to permit the search was up to her. The chief specifically told her that she could refuse consent. Accordingly, the Court also finds that these factors support a finding that the defendant's consent was voluntary.

The Court also examines whether the officers acted in a punitive or coercive way. Nothing in the record reveals that the officers treated the defendant punitively. Although there were eventually three officers present, only Lodwick and Bunch were there when the defendant consented to the search the first and second times, and Lodwick's testimony reveals that he was the one who

13

questioned the defendant about consent to search. Additionally, Lodwick testified that the chief questioned her the third time. Thus, it does not appear from the record that the defendant was questioned by all three officers at once. The defendant contends that the officers' asking her for consent three times was coercive. The Court finds that the defendant gave consent the first time she was asked and was only questioned a second and third time after her comment which indicated that she might not want the officers to search. The Court finds that the second and third inquiries were made only to confirm that the defendant was knowingly and voluntarily consenting. Moreover, Lodwick's testimony reveals that the defendant was not questioned at length by any of the three officers prior to any of her three consents.

Finally, the Court considers the defendant's comment that she might as well let the officers search because they were going to search anyway. The Court finds that even if this comment indicated that the defendant was merely acquiescing to authority when she initially consented or that she was regretting her initial consent and withdrawing it, Lodwick and the chief subsequently informed the defendant that the decision to consent was hers and that she did not have to consent. The Sixth Circuit faced a similar factual situation in United States v. Evans, No. 96-1266, 1997 WL 377026 (6th Cir. July 2, 1997) (per curiam). In Evans, the defendant consented to the search of his duffel bag, then, upon being asked if the officer could search his person, refused consent to search his person and withdrew consent to search the bag. Id. at **1. The defendant subsequently overheard the officer radioing for a drug dog and again gave consent to search his duffel bag. Id. The court held that the defendant's "temporary withdrawal of consent would not render the consent invalid; on the contrary, the withdrawal would indicate that [the defendant] was fully aware that he was not required to consent to a search." Id. at **3.

14

In the present case, the Court finds that Lodwick's ceasing to search along with his and the

chief's explaining to the defendant that she could refuse consent likewise indicate that the defendant

was also fully aware that she did not have to consent and that if she refused consent, the search

would stop. The Court finds that in considering the defendant's comment in light of the totality of

the circumstances, the defendant did knowingly and voluntarily consent upon a fuller explanation

of her options. Thus, the Court finds that the totality of the circumstances reveal that the defendant

voluntarily consented to the search of 1033 Woodland Way.

The defendant alternatively argues that if she did consent to a search of the residence, the

officers' search in the back room and refrigerator exceeded the scope of her consent because that

consent was limited to an investigation of the stolen water.

> When law enforcement officers rely upon consent as the basis
> for a warrantless search, the scope of the consent given determines
> the permissible scope of the search. Florida v. Jimeno, 500 U.S. 248,
> 251-52 . . . (1991). The standard for measuring the scope of the
> consent given is objective reasonableness–"what would the typical
> reasonable person have understood by the exchange between the
> officer and the suspect?" Id. at 251[.]

United States v. Gant, 112 F.3d 239, 242 (6th Cir. 1997). In the present case, Lodwick's testimony

shows that the defendant placed no limitation whatsoever upon the search of the home. Although

Lodwick initially discussed the water theft with the defendant when she opened the door, there is

no evidence in the record that Lodwick asked to search in relation to the water investigation.

Instead, Lodwick's and the defendant's discussion of the defendant's authority to consent, including

the fact that she had access to all of the rooms in the house, shows that the parties contemplated that

Lodwick would search the entire house. The Court finds that a typical reasonable person privy to

this discussion would have understood that the officer sought to search the entire house.

Accordingly, the Court concludes that Lodwick's search of the back room of the house and the refrigerator did not exceed the scope of the search.

Accordingly, the Court finds that the items seized during the officers' September 24, 2004 search of the defendant's residence should not be suppressed because such items were either in the officers' plain view after the defendant consented to their entry or were obtained pursuant to her voluntary consent to search the residence.

## B. Search Pursuant to Warrant on September 27, 2004

The defendant contends that the search warrant authorizing the September 27, 2004 search of 1033 Woodland Way was not based upon probable cause because (1) the information in the supporting affidavit was gleaned from a prior invalid search, (2) it is not clear from the affidavit who saw other persons in the residence or whether the observer was reliable, and (3) the affidavit contains false information about the defendant's prior convictions. The government responds that even if the portion of the affidavit relating to the defendant's prior convictions is stricken, the affidavit still provides probable cause for the issuance of the search warrant based upon the items seen during the September 24 search. It also argues that Lodwick, the affiant, was the person who observed other individuals at the residence.

A judge shall not issue a warrant for the search of a home or personal property except upon a finding of "probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Probable cause to search is "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). To make such a showing "requires only a

16

probability or substantial chance of criminal activity, not an actual showing of such activity." <u>Id.</u> at 244 n.13.  Thus, the Supreme Court has observed that

> probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," <u>Carroll v. United States</u>, 267 U.S. 132, 162 . . . (1925), that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A "practical, nontechnical" probability that incriminating evidence is involved is all that is required.  <u>Brinegar v. United States</u>, 338 U.S. 160 . . . (1949).

<u>Texas v. Brown</u>, 460 U.S. 730, 742 (1983).  In other words, probable cause is "reasonable grounds for belief supported by less than prima facie proof but more than mere suspicion." <u>United States v. Bennett</u>, 905 F.2d 931, 934 (6th Cir. 1990).  Whether probable cause to issue a search warrant exists is evaluated by looking at the totality of the circumstances.  <u>Gates</u>, 462 U.S. at 238.

Initially, the Court would note that the issuing judge's determination that probable cause exists is entitled to "'great deference.'"  <u>United States v. Allen</u>, 211 F.3d 970, 973 (6th Cir. 2000) (quoting <u>Gates</u>, 462 U.S. at 236).  This deferential standard promotes the preference for the use of search warrants as opposed to warrantless searches.  <u>Id.</u>  In determining the sufficiency of the search warrant affidavit, the Court is "concerned only with the statements of fact contained in the affidavit." <u>United States v. Hatcher</u>, 473 F.2d 321, 323 (6th Cir. 1973); <u>see also</u> <u>Whiteley v. Warden</u>, 401 U.S. 560, 565 (1971).  In reviewing the propriety of the search warrant, the Court considers "the evidence that the issuing magistrate had before him only 'to ensure that [he] ha[d] a substantial basis . . . for concluding that probable cause existed.'"  <u>United States v. Jones</u>, 159 F.3d 969, 973 (6th Cir. 1998) (quoting <u>Gates</u>, 462 U.S. at 238-39) (alterations in original).

17

In the present case, the affidavit supporting the search warrant states as follows:[1]

> On 9-24-04 at approx. 5:30 p.m., I Sgt. Lodwick went to the residence of Abigail Merriman and Mangus Torstesson at 1033 Woodland Way in Dandridge, Tn, in reference to stealing water from the water dept. Upon knocking on the door Abigail Merriman came to the door upon further investigation Hollis Romines convicted for drugs and two outstanding warrants for VOP from Jefferson Co. was inside the residence subsequently arrested. Merriman stated she was living there and gave verbal consent to search the residence, in which I observed as being trained in narcotics numerous smoking paraphernalia, finding several ingredients used to manufacture methamphetamine; Sudafed tablets, acetone, acetaminophen, numerous bottles of fingernail polish, scales, several rolls of aluminum, batteries, salene torch, sterno heating units, also several written documents with chemical companies and web sites as to purchase anhydrous ammonia and supplies of which Merriman stated were hers. Merriman has been convicted of manufacturing methamphetamine furthermore Hollis Romines has been also convicted of drug charges and several other convicted felons with drug charges have been seen at the residence. Also computers in the house. As a trained officer in narcotics and dangerous drugs I observed these above which are ingredients in the making of methamphetamine.

The affidavit is signed by Lodwick.

The defendant first argues that the items observed by Lodwick on September 24, 2004, must be disregarded in the probable cause determination because the September 24 search was illegal. The Court has already found that Lodwick could properly observe the listed items because they were in plain view when the defendant consented to him entering her home or because Lodwick observed them in a search pursuant to the defendant's voluntary consent. Accordingly, the issuing judge properly considered the listed items.

Second, the defendant contends that the affidavit's assertion that "several other convicted

---

[1]The Court has attempted to set out the affidavit exactly as written by Lodwick.

felons with drug charges have been seen at the residence" must be disregarded because the affidavit does not attest to the reliability of the unnamed informant who observed the individuals at the residence. The government argues that the affidavit reflects that Lodwick was the person who spotted the individuals and that no further assertions regarding his reliability are necessary.

When an affidavit supporting a search warrant contains information from an unidentified confidential informant, the veracity, reliability, and basis of knowledge of the informant are all relevant to the totality of the circumstances test. Allen, 211 F.2d at 972-73. On the other hand, when an informant, who saw criminal contraband in a residence in the immediate past, is named in the affidavit, the affidavit provides probable cause for the warrant to issue without further corroboration of the informant's information. United States v. Pelham, 801 F.2d 875, 878 (6th Cir. 1986); see also United States v. Miller, 314 F.3d 265, 270 (6th Cir. 2002). The Court agrees with the government that Lodwick's references to himself in the affidavit ("I Sgt. Lodwick" and "I observed") indicate that all of the information in the affidavit came from Lodwick. Moreover, the Court notes that the affidavit states that Lodwick saw Romines, one of the individuals with drug convictions, at the residence on September 24, 2004. Thus, even excluding the reference to other convicted felons, the affidavit still contains information that a person known for his involvement with drugs was at the defendant's residence in the immediate past.

Finally, the defendant states that the affidavit's assertion that "Merriman has been convicted of manufacturing methamphetamine" is false and cannot form the basis for a finding of probable cause. In Franks v. Delaware, 438 U.S. 154, 155, 164 (1978), the Supreme Court examined whether a defendant ever has the right, pursuant to the Fourth and Fourteenth Amendments, to contest the truthfulness of sworn statements of fact in a search warrant affidavit. Sworn affidavits in support

19

of search warrants are, in the first instance, presumed to be valid.  Id. at 171.  Nevertheless, a

defendant may attack the veracity of factual statements in the affidavit under certain limited

circumstances:

> [W]here the defendant makes a substantial preliminary showing that
> a false statement knowingly and intentionally, or with reckless
> disregard for the truth, was included by the affiant in the warrant
> affidavit, and if the allegedly false statement is necessary to the
> finding of probable cause, the Fourth Amendment requires that a
> hearing be held at the defendant's request.

Id. at 155-56; see also United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990).  If the defendant

makes this showing and is granted what has come to be known as a "Franks hearing," he or she must

show by a preponderance of the evidence that the affiant intentionally or recklessly included false

statements, which are necessary to the probable cause finding, in the affidavit, in order to suppress

the evidence gained in the search.  Franks, 438 U.S. at 156; Bennett, 905 F.2d at 934.

At the suppression hearing, the defendant presented Collective Exhibit 1, a series of six state-

court judgments, each stating that the defendant had been convicted of "simple possession-3rd

offense."  On cross-examination, Lodwick examined the judgments and testified that the defendant

had in fact not been previously convicted of manufacturing methamphetamine.  The Court finds that

the defendant may have established that the quoted statement from the affidavit is incorrect but that,

even if it is, it is not necessary to the finding of probable cause.  The affidavit relates that Lodwick

was in the defendant's home less than seventy-two hours earlier and observed numerous items,

which he knew to be ingredients for methamphetamine based upon his training.  Among these items

were written documents listing chemical companies and web sites where anhydrous ammonia could

be purchased.  Merriman admitted that these documents were hers.  Additionally, Lodwick observed

and arrested Romines, who had previously been convicted of drug charges, at the residence.  The

20

Court finds that this information is sufficient to establish a fair probability that contraband in the form of the ingredients to manufacture methamphetamine would still be at the residence on September 27, 2004. The statement that Merriman had previously been convicted of manufacturing methamphetamine is not necessary to the probable cause determination. Moreover, the Court finds that the record is devoid of any evidence that Lodwick included this statement "knowingly and intentionally, or with reckless disregard for the truth."

Accordingly, the Court finds that defendant's argument that the search warrant affidavit is insufficient to provide probable cause to be without merit. The defendant's residence was searched pursuant to a valid search warrant on September 27, 2004. Thus, the Court recommends that the defendant's motion to suppress all evidence stemming from the September 27, 2004 search be denied.

## C. Statements

The defendant contends that she was illegally arrested on September 27, 2004, because her arrest flowed from the illegal searches of her home on September 24 and 27, 2004. She argues that the statement she gave at the jail following her arrest must be suppressed because it flows from her illegal arrest and is, therefor, the fruit of the poisonous tree.

> The exclusionary rule generally bars the admissibility at trial of tangible evidence, as well as verbal statements, acquired through unconstitutional means. See Wong Sun v. United States, 371 U.S. 471, 485 . . . (1963). The rule excludes from admissibility "not only primary evidence obtained as a direct result of an illegal search or seizure, Weeks v. United States, 232 U.S. 383 . . ., but also evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.'" Segura v. United States, 468 U.S. 796, 804 . . . (1984) (quoting Nardone v. United States, 308 U.S. 338, 341 . . . (1939)).

United States v. Akridge, 346 F.3d 618, 623 (6th Cir. 2003), cert. denied, 540 U.S. 1203 (2004).

In the present case, the Court has already found that neither the September 24 or the September 27, 2004 searches of the defendant's residence were illegal. Moreover, the officers had probable cause to arrest the defendant on September 27, 2004, based upon methamphetamine and materials used to manufacture methamphetamine found at the scene. Thus, the Court finds that the defendant's subsequent statement did not flow from any prior illegality and is not subject to exclusion.

### III. CONCLUSION

For the reasons set forth herein, it is **RECOMMENDED** that defendant's Motion to Suppress Evidence [**Doc. 16**] be **DENIED**.[2]

Respectfully submitted,

_____ s/ H. Bruce Guyton _____
United States Magistrate Judge

---

[2]Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140 (1985). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).